IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KARI CRUTCHER,<br><br>Plaintiff,<br><br>v.<br><br>FIRST GUARANTY MORTGAGE CORPORATION, PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO INVESTMENTS LLC, and ANDREW PETERS,<br><br>Defendants. | Civil Action No. 23-1261-CFC |

**MEMORANDUM ORDER**

Pending before me is Relator Kari Crutcher's Amended Motion for Leave to File a Revised Amended Complaint Pursuant to Rule 15(a) (D.I. 133).

**BACKGROUND**

Kari Crutcher worked remotely as a loan underwriter for First Guaranty Mortgage Corporation ("FGMC") from September 2014 to November 2014. On October 13, 2016, she filed this *qui tam* action against FGMC in the United States District Court for the Northern District of Georgia, alleging that FGMC violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, by falsely endorsing certain mortgages as eligible for the insurance program run by the United States

Department of Housing and Urban Development's Federal Housing Administration. (D.I. 1)

Almost six years later, on June 29, 2022, Crutcher filed an Amended Complaint. (D.I. 19) The Amended Complaint added new defendants, including Pacific Investment Management Company, LLC and PIMCO Investments, LLC. (together, "PIMCO"). Other than by lumping the new defendants within the defined term "FGMC," the Amended Complaint made no allegations or claims against PIMCO, and did not allege what relationship, if any, it had to FGMC. (D.I. 19)

The next day, June 30, 2022, FGMC filed a chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On August 17, 2022, the United States filed a notice stating that it declined to intervene in the case. (D.I. 28)

On November 2, 2022, the Bankruptcy Court issued an order confirming FGMC's plan of reorganization. Among other things, the plan and Confirmation Order released any claims FGMC had against PIMCO and enjoined Crutcher from asserting any derivative or other claims belonging to FGMC.

On November 7, 2022, Crutcher served PIMCO with the Amended Complaint. (D.I. 37, 38)

On November 28, 2022, PIMCO moved to dismiss the Amended Complaint. (D.I. 49) PIMCO's supporting brief pointed out that the Amended Complaint did not allege what PIMCO had done wrong, and argued that Crutcher's claims were also barred by the statute of limitations, barred by the Bankruptcy Court's Confirmation Order, and failed to state a claim against FGMC. (*Id.*)

On January 11, 2023, Crutcher filed a response to the motion to dismiss, and a cross-motion for leave to file a Second Amended Complaint. (D.I. 71) Crutcher's response did not attempt to defend the sufficiency of the Amended Complaint, but argued that the allegations in the proposed Second Amended Complaint were sufficient to state a timely claim against PIMCO. The proposed Second Amended Complaint alleged that PIMCO had acquired control of FGMC in September 2015 (D.I. 71-2 at ¶ 174) and thereafter caused FGMC to continue to make false claims. (*Id.* at ¶ 190) The proposed Second Amended Complaint also alleged that PIMCO was FGMC's alter ego, thereby providing a basis to pierce the corporate veil and hold PIMCO liable for FGMC's fraud. (*Id.* at ¶¶ 191-92).

After briefing on the motion to dismiss and cross-motion for leave to file a Second Amended Complaint, but before any ruling, on March 9, 2023, Crutcher filed a motion for leave to file a Supplemental Second Amended Complaint, which added additional allegations against FGMG's former CEO, Andrew Peters. (D.I. 81)

On June 15, 2023, the United States District Court for the Northen District of Georgia granted Crutcher's motion for leave to file her Supplemental Second Amended Complaint and denied PIMCO's motion to dismiss as moot, explaining that PIMCO's arguments were better addressed on a fully-briefed motion to dismiss. (D.I. 93) Crutcher filed the Supplemental Second Amended Complaint the same day. (D.I. 94)

On June 29, 2023, PIMCO moved to dismiss the Supplemental Second Amended Complaint. (D.I. 99) PIMCO argued that the Supplemental Second Amended Complaint failed to state a claim and that Crutcher's claims were barred both by the Bankruptcy Court's orders and by the statute of limitations. (*Id.*)

PIMCO also sought relief from the Bankruptcy Court. On August 3, 2023, PIMCO filed a motion asking the Bankruptcy Court to enjoin Crutcher from pursuing any alter ego and veil piercing claims against PIMCO on the ground that any such claims had been dismissed by the Confirmation Order. (D.I. 104-2 at pp. 90-114)

On September 5, 2023, the Bankruptcy Court entered an Order barring Crutcher from pursuing "[a]ny and all claims, causes of action, liabilities, remedies, and/or theories relating to alter ego, veil piercing, and/or any form of vicarious liability, including those asserted in [this case], against any of the

4

PIMCO Parties." On September 19, 2023, Crutcher filed a notice of appeal from that order. (D.I. 105-1)

On September 22, 2023, Crutcher moved to transfer the case to this District. (D.I. 105)

On October 13, 2023, Crutcher filed in the United States District Court for the Northern District of Georgia a "Motion for Leave to File a Motion to Dismiss Claims Pursuant to Rule 41(a)(2) and to File a Third Amended Complaint." (D.I. 108). The proposed Third Amended Complaint disclaimed any alter-ego or veil piercing claims against PIMCO but alleged that PIMCO had "conspired to knowingly assist" FGMC in its alleged fraud. (D.I. 108-1 at ¶¶ 192-93) The proposed Third Amended Complaint also added new defendants affiliated with PIMCO. (*Id.* at ¶ 21)

On October 27, 2023, PIMCO filed a response in opposition to Crutcher's motion for leave to file a Third Amended Complaint. (D.I. 111) PIMCO also sought further relief from the Bankruptcy Court, arguing that the proposed Third Amended Complaint still violated the Bankruptcy Court's orders.

On November 6, 2023, the United States District Court for the Northern District of Georgia granted Crutcher's motion to transfer the case to this district.

On November 16, 2023, Crutcher voluntarily dismissed her appeal of the Bankruptcy Court's September 5, 2023 Order.

On December 27, 2023, the Bankruptcy Court denied PIMCO's request for further relief. The Bankruptcy Court held that Crutcher was not barred from pursuing a claim against PIMCO for "knowingly assisting" FGMC in making false statements (to the extent any such claim is recognized by law) because such a claim was not part of FGMC's bankruptcy estate and was not released but instead belonged to the United States. *In re First Guaranty Mortgage Corporation*, 2023 WL 8940688 (Bankr. D. Del. Dec. 27, 2023).

On February 9, 2024, Crutcher moved for leave to file a revised version of her Third Amended Complaint and declared that her prior motion was moot. (D.I. 132 n.2) Three days later, Crutcher filed the pending amended motion for leave to file yet another version of a Third Amended Complaint. (D.I. 133) This version of the Third Amended Complaint (D.I. 133-8) continues to disclaim any theory based on alter ego or veil piercing (D.I. 133-8 at 193) and drops any allegation of conspiracy or that PIMCO "directly caused" (*see* D.I. 147 (redline) at pp. 53-59) FGMC's fraud but alleges that PIMCO "knowingly assisted" FGMC in its alleged fraud. (D.I. 133-8 at 192, 213)

On February 26, 2024, PIMCO filed a response in opposition to Crutcher's motion for leave to file the latest proposed Third Amended Complaint. (D.I. 134) Briefing on the motion is complete.

On September 30, 2024, I stayed this matter pending resolution of PIMCO's appeal from the Bankruptcy Court's December 27, 2023, order. On March 31, 2025, I affirmed that order and entered a further order lifting the stay in this matter.

Along the way, defendant Peters answered the Supplemental Second Amended Complaint (D.I. 96) and has not opposed the filing of the proposed Third Amended Complaint.

So, as things stand: the operative complaint in this case is the Supplemental Second Amended Complaint (D.I. 93); PIMCO moved to dismiss the Supplemental Second Amended Complaint (D.I. 99); the Bankruptcy Court barred Crutcher from pursuing claims she asserted against PIMCO in the Supplemental Second Amended Complaint, and as a result Crutcher herself sought to dismiss her Supplemental Second Amended Complaint (D.I. 108). Accordingly, I will dismiss the Supplemental Second Amended Complaint and deny PIMCO's motion as moot.

Additionally, Crutcher has filed several motions for leave to file successive versions of a Third Amended Complaint, and PIMCO has opposed those motions. The Bankruptcy Court, affirmed by this Court, has determined that Crutcher's pursuit against PIMCO of the claims asserted in the most recently proposed Third Amended Complaint (if such claims exist at law) would not violate the

Confirmation Order, but PIMCO argues that filing of the Third Amended Complaint should not be permitted on various other grounds.

Because Peters has not opposed Crutcher's motion for leave to file the Third Amended Complaint, I will grant it at least as it relates to Peters. The Third Amended Complaint would also add new defendants. Although it appears that those new defendants are affiliates of PIMCO, no one has entered an appearance on their behalf and it would not be appropriate for me to attempt to evaluate what rights and defenses they might choose to assert once a complaint has been properly served on them. *See Chesler v. City of Jersey City*, No. 2:15-CV-1825-SDW-ESK, 2019 WL 6318301, at *4 (D.N.J. Nov. 26, 2019) ("Defendants may not raise a futility argument as to proposed claims against new parties."); *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 230 (E.D. Pa. 2012) (declining to consider defense potentially available to proposed new defendants). Accordingly, I will also grant Crutcher's motion for leave to file the Third Amended Complaint as to the new proposed defendants.

It remains for me to piece together and evaluate Crutcher's arguments for leave to amend as against PIMCO, and PIMCO's arguments in opposition. (PIMCO's arguments are set forth in D.I.s 99, 107, 111, 134, 138 and 153; Crutcher's are set forth in D.I.s 105, 106, 108, 110, 132, 133, 135 and 151.)

8

## DISCUSSION

Crutcher argues that leave to amend under Rule 15(a) is to be granted freely, when justice so requires, and that by filing the Third Amended Complaint she merely seeks to conform her pleading to the Bankruptcy Court's rulings. (D.I. 133 at 10)

PIMCO originally made three arguments in response. First, PIMCO argued that amendment should be denied as futile because the claims asserted against it in the Third Amended Complaint were time barred. (D.I. 111 at 3-6) Second, PIMCO argued that amendment should be denied as futile because the Third Amended Complaint failed to satisfy the False Claims Act's pleading standards. (D.I. 111 at 6-10) Third, PIMCO argued that amendment should be denied because the filing of the Third Amended Complaint would violate the Bankruptcy Court's orders. (D.I. 111 at 10-18) As noted above, the third argument has already been resolved against PIMCO and I need not address it further.

PIMCO and Crutcher (and the Court) would likely have been better served by stipulating to the filing of the Third Amended Complaint and then presenting their arguments in a fully-briefed motion to dismiss. However, in light of the peculiar procedural history of this case and Crutcher's penchant for "moving the goal posts," I will address PIMCO's futility arguments in the context of the pending motion for leave to amend.

Whether to grant or deny a motion for leave to amend is within the district court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may deny leave to amend where the proposed amendment would be futile. *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). In assessing futility, district courts generally apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, the court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (*quoting Twombly*, 550 U.S. at 555). The court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

A plaintiff must plead facts sufficient to show that a claim has "substantive plausibility" on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [plaintiff] pleads factual content

that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because they are fraud claims, False Claims Act claims are also subject to the enhanced pleading requirements of Rule 9(b). *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017). A relator must provide "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157–58 (3d Cir. 2014) (*quoting U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "Describing a mere opportunity for fraud will not suffice." *Foglia*, 754 F.3d at 158. Moreover, "an inference of illegality based on facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden." *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018). Where a relator alleges that a defendant caused false claims to be filed, Rule 9(b) requires relators to adequately allege how they did so. *See United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017).

PIMCO first argues that a party cannot be liable under the False Claims Act unless the party itself actually submitted a claim or made a false statement to the government, and that the Third Amended Complaint fails to allege that PIMCO did so. (D.I. 111 at 7). PIMCO's statement of the law is wrong. By its plain language, the False Claims Act creates liability to the government for any person who "knowingly presents, or *causes to be presented*, a false or fraudulent claim for payment or approval," "knowingly makes, uses, or *causes to be made or used*, a false record or statement material to a false or fraudulent claim," and anyone who "*conspires* to commit" such a violation. 31 U.S.C. §§ 3729(a)(1)(A), (B), (C) (emphasis added). In *United States ex rel. Marcus v. Hess*, the Supreme Court held that the predecessor provisions of the False Claims Act extending coverage to those who "cause" a false claim or "conspire" to do so, "indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." 317 U.S. 537, 544 (1943). The False Claims Act thus covers "indirect mulcting of the government" *United States v. Lagerbusch*, 361 F.2d 449, 449 (3d Cir. 1966), and a person who knowingly assisted in causing the government to pay claims ground in fraud can be liable even if she did not directly have contractual relations with the government. *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242–43 (3d Cir. 2004). *See also*

*United States v. Teeven*, 862 F. Supp. 1200, 1223 (D. Del. 1992) ("Because the Defendants knowingly assisted in causing the Government to pay claims which were grounded in fraud, the Defendants are liable under the Act.")

PIMCO also argues that Crutcher's claim that PIMCO knowingly assisted FGMG's alleged False Claims Act violations fails because her conclusory allegations are unsupported by "allegations of direct involvement" in the fraud. (D.I. 111 at 8-9) Here, PIMCO is on firmer ground.

Alleging a controlling ownership stake in a subsidiary that has committed fraud is not enough to state a False Claims Act claim against the owner. *United States v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 514–15 (E.D. Pa. 2016) (*citing U.S. ex rel. Lisitza v. Par Pharm. Companies. Inc.*, No. 06–06131, 2013 WL 870623, at *5 (N.D.Ill. Mar. 7, 2013) ("[T]he complaint does not allege facts that *the scheme itself* was controlled or directed by [the parent companies—] just that they had control over [the subsidiary] in a general sense.") (emphasis in original). Moreover, "mere awareness that another may, or even has, chosen to make [a false] claim does not alone constitute "'causing a false claim to be presented.'" *Schmidt*, 386 F.3d at 245 *(citing United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932 (8th Cir.2001)).

To state a direct False Claims Act claim against a corporate parent, a plaintiff must allege facts creating a plausible claim that the parent was "directly

13

involved" in submitting false claims or causing them to be submitted to the government. *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431 (E.D. Pa. 2020).

In *Kindred Healthcare*, the complaint alleged that the corporate parent had directly participated in False Claims Act violations by

> "determining and controlling at each Kindred nursing home: (i) the numbers of staff and hours of labor at each facility, (ii) the expenditures for labor, (iii) the revenue targets, census targets and payor-mix targets, and (iv) resident recruitment strategies and discharge practices"; "overriding the decisions of nursing home administrators, department heads and licensed nursing staff charged with the legal responsibility for determining the staffing necessary to meet the needs of residents"; and "centrally controlling the claims and reimbursement process at each nursing home."

*Id.* at 454. Based on those allegations, the court concluded that the complaint sufficiently alleged the parent's direct participation in causing the submission of false or fraudulent claims and certifications by the defendants' nursing facilities. *Id.*

Similarly, in *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 62 (D.D.C. 2007), the court refused to grant summary judgment for the corporate parent because, among other things, there was evidence that an official of the corporate parent had instructed an employee to prepare a fraudulent cost report for submission to the government, and evidence that correspondence

14

central to the fraud was submitted on the letterhead of the corporate parent. *See also United States ex rel. Berkley v. Ocean State, LLC*, No. CV 20-538-JJM-PAS, 2023 WL 3203641, at *7 (D.R.I. May 2, 2023) (sustaining complaint because it alleged that the parent company directed its subsidiaries to submit PPP loan applications that falsely omitted the parent company's own financial resources); *United States ex rel. Ebu-Isaac v. INSYS Therapeutics, Inc.*, No. 216CV07937JLSAJW, 2021 WL 3619958, at *6 (C.D. Cal. June 9, 2021) (sustaining complaint because it alleged, among other things, that the corporate parent "devised" a fraudulent scheme that involved a variety of subsidiary entities to achieve a common goal, that the parent was "key to the large scale operation . . .," that it directed its subsidiaries to engage in each step of the scheme, and "negotiated" with other participants in the scheme); *U.S. ex rel. Alt v. Anesthesia Servs. Assocs., PLLC*, No. 3:16-cv-0549, 2019 WL 7372510, at *18 (M.D. Tenn. Dec. 31, 2019) (sustaining complaint because it alleged that a physician-owner of pain management clinics had, in addition to submitting his own fraudulent claims, set policies and incentive programs that he designed to induce the submission of false claims by others); *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, No. CV 15-13065-PBS, 2018 WL 4539684, at *5 (D. Mass. Sept. 21, 2018) (sustaining complaint because it alleged that representatives of the parent had, among other things, rejected recommendations

15

that they were told were necessary in order to bring the subsidiary into regulatory compliance and stop the submission of false claims). In each of these cases, the court concluded that the plaintiff had alleged facts supporting a plausible claim that the parent was "directly involved" in the fraud.

By contrast, courts have dismissed complaints against corporate parents when they lack allegations supporting a plausible claim of the parents' "direct involvement" in the fraud. For instance, in *Executive Health Resources*, the complaint alleged that the corporate parent and its subsidiaries "conducted extensive due diligence before acquiring EHR, integrated EHR into their management and business operations, performed joint marketing efforts and had knowledge of the relevant Medicare and Medicaid standards with which EHR needed to comply, as well as alleging that EHR made these defendants' other products more profitable." 196 F. Supp. 3d at 512–13. The court held that these allegations were insufficient to state a claim for direct liability under the False Claims Act because they failed to establish direct involvement with the fraud -- as distinct from involvement with the subsidiary's business generally. *Id.* at 514.

Similarly, in *Russ v. North American Rescue, LLC*, No. CV 21-4238, 2024 WL 3557441, at *5 (E.D. Pa. July 26, 2024), the plaintiffs alleged that the corporate parent, Schein, was directly involved in a fraudulent scheme by its subsidiary NAR through "(1) direct control of NAR's business operations; (2)

16

managing and supervising NAR's conduct in selling to the Government; (3) failing to properly prevent NAR from submitting false claims; (4) failing to require NAR to mark its products with the proper country of origin; (5) encouraging NAR to continue selling nonconforming goods to the Government; and, (6) directly benefitting from NAR's misconduct by adding Schein-branded products to the medical kits sold to the Government." Nevertheless, the court held that none of these allegations constituted "direct involvement" in the fraud, and agreed with Schein that the complaint should be dismissed because it lacked "allegations identifying any specific, direct acts that Schein undertook that could constitute fraud." *Id.*, at *5. *See also United States ex rel. Schieber v. Holy Redeemer Healthcare Sys., Inc.*, No. CV 19-12675, 2024 WL 1928357, at *3 (D.N.J. Apr. 30, 2024) (dismissing claims against an 85% owner because the complaint did not allege facts sufficient to show the owner's "direct involvement or participation in causing the alleged submission fraudulent claims").

Accordingly, to state a claim against a corporate parent for "knowing assistance" in the submission of fraudulent statements to the government, a plaintiff must allege facts supporting a plausible inference that the parent was "directly involved" not merely in the business of the subsidiary generally, but in the fraud itself. Indeed, Crutcher concedes that to be directly liable under the False

17

Claims Act, PIMCO "needs to have taken specific actions to encourage and facilitate the false claims...." (D.I. 105 at 6)

Here, Crutcher's proposed Third Amended Complaint does not allege facts supporting a plausible claim that PIMCO "knowingly assisted" FGMG's alleged False Claims Act violations. To begin, the Third Amended Complaint alleges that FGMC's fraudulent practices began before PIMCO controlled FGMC and were pervasive and cultural. (D.I. 133-8 at ¶¶ 7-19) That defeats any inference that PIMCO devised the fraud, or that some action, assistance or information from PIMCO was necessary for the alleged fraud. Indeed, Crutcher's Amended Complaint included hundreds of paragraphs of allegations about FGMC's fraudulent practices, yet never once mentioned anything allegedly done by PIMCO. (D.I. 19) Moreover, the Third Amended Complaint does not allege that PIMCO made any false statements itself or provided FGMC with false information expecting that it would be passed along to the government. Finally, the factual allegations that Crutcher says show "that PIMCO directly caused FGMC to continue submitting those false claims after it acquired FMGC in 2015" (D.I. 110 at 4-5) describe only unremarkable general involvement of a parent with the business of its subsidiary, not direct involvement with a fraud. Crutcher, for example, alleges that PIMCO representatives required FGMC executives to attend meetings, but does not allege what was discussed at the meetings (D.I. 133-8 at ¶

202); Crutcher alleges that PIMCO "built out the risk management systems" and "was very involved in credit risk," but does not allege that these systems assisted the fraud (D.I. 133-8 at ¶ 204-05); Crutcher alleges that PIMCO "handpicked senior executives," including a new CEO from outside FGMC, and "fired legacy staff" but does not allege facts explaining why those personnel changes caused or assisted the continuation of the allegedly pervasive fraud that the prior employees had been committing (D.I. 133-8 at ¶¶ 199, 209); and Crutcher alleges that PIMCO "had an appetite for riskier mortgages" but does not allege that PIMCO directed or assisted FGMC to sate that appetite through fraud. (D.I. 133-8 at ¶ 208) In sum, the Third Amended Complaint does not allege facts showing that PIMCO was "directly involved" in the fraud, as would be necessary to support a plausible inference that PIMCO could be liable for "knowingly assisting" False Claims Act violations by FGMC.

Accordingly, filing of the Third Amended Complaint against PIMCO would be futile because its allegations are insufficient to state a direct claim under the False Claims Act. On this basis, I will deny Crutcher's motion for leave to file the Third Amended Complaint as against PIMCO.

NOW THEREFORE, at Wilmington on this Twenty-sixth Day of February in 2026, it is HEREBY ORDERED that:

1. The Supplemental Second Amended Complaint (D.I. 94) is DISMISSED;

2. PIMCO's motion to dismiss the Supplemental Second Amended Complaint (D.I. 99) is DENIED AS MOOT;

3. Relator's Amended Motion for Leave to File an Amended Complaint (D.I. 133) is DENIED as to Pacific Investment Management Company, LLC and PIMCO Investments, LLC, and GRANTED as to all other defendants.

_____
Chief Judge